[Cite as *In re Estate of Wilson*, 2025-Ohio-5594.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

In the Matter of the Estate of
Ruth J. Wilson,

[Elizabeth Koeberer et al.,

Appellants].

:

:

:

:

:

No. 24AP-61
(Prob. No. 563322)

(REGULAR CALENDAR)

D E C I S I O N

Rendered on December 16, 2025

**On brief:** *Carlile Patchen & Murphy LLP*, *Jane Higgins Marx*, and *Bryan M. Pritikin*, for appellee, Edson Wilson; *Jay E. Michael Law, LLC*, and *Jay E. Michael*, for appellee, Christine Strom; and *Bailey Cavalieri LLC*, *Robert R. Dunn*, and *Brittany P. Stephen*, for appellee, Robert E. Weir, Trustee of the Elizabeth Koeberer Trust.

**On brief:** *The Law Office of Susan Wasserman*, and *Susan Wasserman*, for appellants.

APPEAL from the Franklin County Court of Common Pleas,
Probate Division

MENTEL, J.

{¶ 1} Elizabeth Koeberer and Susan Wasserman, appellants, appeal from two judgments of the Franklin County Court of Common Pleas, Probate Division. The first judgment denied a motion to reopen the estate of Ms. Koeberer's mother, which appellants had filed with the intention of filing a will contest action under R.C. 2107.76. The second judgment sanctioned Ms. Koeberer and her attorney, Ms. Wasserman, under R.C. 2323.51 for their frivolous conduct during five years of litigation in the probate court and awarded attorney fees to appellees Edson Wilson, Christine Strom, and Robert E. Weir, Trustee of the Elizabeth Koeberer Trust. We find no merit to appellants' arguments alleging error and

therefore affirm both judgments of the probate court. In addition, we deny Ms. Koeberer's motion to supplement the record and Mr. Weir's motion for sanctions.

## I. Factual & Procedural Background

{¶ 2} Ruth J. Wilson executed her last will and testament on July 15, 2011. The will divided her estate into three equal shares, bequeathing one each to her son, Edson Wilson, and to her daughter, Christine Strom. The third share was bequeathed to Edson Wilson "or his successor as the Trustee of the Elizabeth W. Koeberger Trust," a trust that Mrs. Wilson created for the benefit of her other daughter, Elizabeth Koeberer. (October 28, 2013 Last Will & Testament of Ruth J. Wilson.) However, both the will and the trust documents incorrectly spelled Elizabeth's last name, Koeberer, as "Koeberger." Mr. Wilson resigned as trustee on February 7, 2014, and was replaced as trustee by Robert Weir, the estate's attorney. (May 7, 2021 Mag.'s Decision at 3.)

{¶ 3} Ruth Wilson passed away on October 1, 2013, and her son, Edson, opened the estate on October 28, 2013. Mr. Wilson, Ms. Strom, and Ms. Koeberer each signed a notice of waiver of probate. The signature line on the form signed by Ms. Koeberer identified her as "Elizabeth W. Koeberger aka Elizabeth W. Koeberer." (Oct. 28, 2013 Waiver of Notice of Probate of Will.) Each notice of waiver stated that "any action to contest the validity of this will must be filed no more than three months after the filing of the certificate" of waiver of notice, which Mr. Wilson signed and filed on October 28, 2013. *Id.* The same day, the probate court appointed him executor of the estate. On April 30, 2015, the probate court approved and settled the estate's final account, closed the estate, and ordered the discharge of its fiduciaries.

{¶ 4} Over four years later, on October 17, 2018, Ms. Koeberer, represented by Ms. Wasserman, filed a motion to reopen her mother's estate, captioned "Motion to Set Aside Waiver of Probate of Will, To Vacate the Certificate of Service of Notice of Probate of Will, To Vacate the Entry Approving the Final Account, The Discharge of the Fiduciary, and for such other Equitable Relief" (hereinafter, "Motion to Reopen").[1] Ms. Koeberer argued that the statute of limitations for bringing a will contest action under R.C. 2107.71 had been tolled because she was under a legal disability.

---

[1] Ms. Koeberer also filed a motion captioned "Motion to Reopen the Estate of Ruth J. Wilson" on October 17, 2018, but it presented no legal basis for reopening the estate other than to reopen it for "purposes of litigation only and to waive bond." The motion discussed above is considered the operative motion to reopen the estate, as it was addressed as such by the probate court.

{¶ 5} Under R.C. 2107.76, the statute of limitation for filing a will contest action is a three-month period that runs from the date of the filing of a certificate of notice of admission of the will to probate. The statute of limitations is tolled for any "person under any legal disability" until "the disability is removed," at which time the three-month window opens. R.C. 2107.76. Ms. Koeberer argued that the definition of legal disability under R.C. 2131.02(D) applied to her. "Persons under guardianship of the person and estate, or either" are considered to have a legal disability. R.C. 2131.02(D). In Ms. Koeberer's view, the trust her mother created was a "stealth testamentary trust" and "she was not aware of" its existence when she signed the waiver of notice of probate of her mother's will. (Mot. to Reopen at 15.) Although it was a "less restrictive alternative to a guardianship," she nevertheless asserted that the trust was "sufficient to qualify her standing as being under a 'legal disability,' " as defined in R.C. 2131.02(D), and therefore under a legal disability that tolled the limitations period. *Id.* She argued that she had been subjected to acts of "extrinsic fraud" during the probate of her mother's will, which included the addition of the notation "Elizabeth W. Koeberger aka Elizabeth W. Koeberer" to the notice of waiver of probate she had signed and deprivation of "all service of process and all rights to review" estate documents. *Id.* at 16. She also argued that her brother's resignation as trustee and his immediate replacement with Mr. Weir created "an impermissible conflict of interest" that was effected "to intentionally deprive" her of the ability to "protect her interests" in the matter. *Id.* at 17.

{¶ 6} The probate court held Ms. Koeberer's motion "in abeyance for more than two years while the parties negotiated settlement," but returned the motion to its active docket after the parties failed to reach an agreement. (May 7, 2021 Mag.'s Decision at 4.) Mr. Weir, as trustee of the Elizabeth Koeberer Trust, Mr. Wilson, and Ms. Strom responded to Ms. Koeberer's motion on January 15, 2021. They argued that the Motion to Reopen was untimely under either the limitations provision in R.C. 2107.76 or, if analyzed as a motion for relief from judgment, under Civ.R. 60(B). Appellees contested Ms. Koeberer's assertion that her status as a trustee somehow placed her under a legal disability, noting that the trust did not exist before the estate's administration, "so it is unclear how [she] was under a 'legal disability' *because of* the Trust before it was even created." (Emphasis in original.) (Jan. 15, 2021 Combined Memo in Opp. at 7.) They also argued that the time to appeal the probate

court's entry had long since elapsed, and that the doctrine of laches applied to bar the action.

{¶ 7} Ms. Koeberer raised a number of new allegations in her reply, to which she attached 60 pages of exhibits. (Feb. 4, 2021 Reply to Combined Memo in Opp.) She accused Mr. Wilson of transferring funds and stocks to himself and Ms. Strom before their mother's death, and asserted that the misspelling of her name in the will and trust documents was the "basis" for her claim that she had "been denied due process of law." *Id.* at 5. She also argued for granting her motion as one for relief from judgment under Civ.R. 60(B). *Id.* at 6.

{¶ 8} Appellees filed a motion to strike the reply, or, in the alternative, to file a surreply in response. In addition, Mr. Wilson filed a motion seeking attorney fees and costs under R.C. 2323.51, arguing that the Motion to Reopen and Ms. Koeberer's other filings were frivolous. He accused her of seeking relief in the probate court "under false pretenses" by filing a challenge to the estate's administration three years after it had closed with frivolous arguments: "Despite admitting to being competent, admitting to never being under a guardianship, and filing a notarized Affidavit, [Ms. Koeberer] frivolously maintained her claim of being under a legal disability, which she admits was only a physical disability." (Mar. 30, 2021 Mot. at 8.) On April 13, 2021, Ms. Koeberer filed a notice of filing of amended exhibits, "though three of the four documents duplicated exhibits already" filed in the probate court. (Apr. 6, 2023 Mag.'s Decision at 7.)

{¶ 9} In a decision filed May 7, 2021, a magistrate concluded that the Motion to Reopen was untimely because Ms. Koeberer was not under a legal disability that had tolled the limitation period under R.C. 2107.76. The magistrate considered the argument equating her status as a trust beneficiary to a legal disability "indefensible and wholly without merit," as she was "not in the same position as a person who has been adjudicated incompetent" and subject to a guardianship. (May 7, 2021 Mag.'s Decision at 9-10.) Ms. Koeberer had "voluntarily signed" the waiver of notice of probate and any alteration to the form to correct her name's misspelling was "not germane to the issue of notice," in the magistrate's view. *Id.* at 8-9. Ms. Koeberer herself had "noted that her name was misspelled, and asked Attorney Weir to correct the misspelling" when waiving notice. *Id.* at 9. If she "was unaware of the contents of the will or other estate filings, it [was] due to her own inaction," including the failure to make any inquiry. *Id.* The magistrate noted as

well that after its admission to probate, the will was a matter of public record. *Id.* In addition, the magistrate found that even if her motion to set aside were analyzed under Civ.R. 60(B), it was "untimely under all provisions" of the rule, noting that she had "delayed more than three years" before bringing the motion. *Id.* at 11-12. The magistrate accordingly denied her motion, denied the motion to strike her reply, and granted Mr. Wilson's request to file a surreply. Finally, noting the "arguable merit" of Mr. Wilson's motion alleging frivolous conduct, the magistrate set the matter for a hearing. *Id.* at 13. Ms. Koeberer requested and was granted a continuance, and the hearing was set for September 27, 2021.

{¶ 10} Ms. Koeberer filed objections to the magistrate's decision and appellees responded. In her reply brief, Ms. Koeberer argued that Mr. Weir had a conflict of interest and asserted a new claim for trust concealment or embezzlement under R.C. 2109.50. Appellees filed a motion to strike the new arguments from her reply brief. The probate court overruled Ms. Koeberer's objections to the magistrate's decision, denied the Motion to Reopen, granted the motion to strike, and entered judgment on July 27, 2021. However, the judgment entry specified that it was not a final appealable order because the "matter of sanctions" under R.C. 2323.51 was not resolved. (July 27, 2021 Jgmt. Entry at 6.)

{¶ 11} Mr. Weir also filed a motion for attorney fees under R.C. 2323.51 on September 10, 2021, alleging that Ms. Wasserman, as Ms. Koeberer's attorney, should also be sanctioned for frivolous conduct. Quoting language from the magistrate's decision and the final judgment adopting it and denying the Motion to Reopen, Mr. Weir argued that the probate court had "recognized" that Ms. Wasserman's filings "were unfocused, difficult to understand, improper, and unclear." (Sept. 10, 2021 Mot. at 5.) "As a direct result of Attorney Wasserman's conduct, the Trust has been adversely affected by the Filings because the Trust principal has been burdened by expenses and fees incurred in responding to the Filings, subsequently diminishing the Trust." *Id.* Ten days later, Ms. Strom also filed a motion for attorney fees against Ms. Wasserman, raising many of the same arguments Mr. Weir had presented. In the interim, Ms. Koeberer had filed a motion to consolidate the motions and to compel discovery.

{¶ 12} Four days before the scheduled hearing, on September 23, 2021, Ms. Koeberer filed a motion for another continuance. The probate court granted the request and scheduled a hearing for November 23, 2021, which the court later postponed until January 12, 2022.

{¶ 13} On October 8, 2021, Ms. Koeberer filed a response to the motions for sanctions, alleging again that Mr. Weir had a conflict of interest. Then, on November 12, 2021, she filed a motion to disqualify Mr. Wilson and Mr. Weir's attorneys, accusing them of discovery violations, "misleading allegations," and having conflicts of interest. (Nov. 12, 2021 Mot. for Disqualification at 3.) The probate court summarily denied the motion to disqualify five days later.

{¶ 14} Ms. Wasserman again requested a continuance of the hearing on January 3, 2022, and the probate court issued a new scheduling order with discovery and witness disclosure deadlines, as well as a new hearing date of May 9, 2022. After Ms. Koeberer disclosed her witnesses, appellees filed a motion on April 28, 2022, to limit or exclude them because they only had knowledge of already-litigated matters that were irrelevant to the issue of frivolous conduct. Appellees filed a motion for a protective order the same day, arguing that Ms. Koeberer's requests for admissions were frivolous, irrelevant, and violated attorney-client privilege.

{¶ 15} One week before the May 9, 2022 trial date, the magistrate granted the motion for a protective order, finding that answers to two of Ms. Koeberer's requests for admissions were "apparent on the face of the record," another "improperly inquire[d]" into an attorney's "legal work in the case," and others were "wholly outside the scope of a sanctions hearing" under R.C. 2323.51. (May 2, 2022 Mag.'s Order at 3.) The same day, Mr. Wilson filed a response to Ms. Wasserman's request for admissions and request for production of documents, and Ms. Koeberer filed a request to supplement the record with a number of exhibits containing documents that were the subject of the motion for a protective order.

{¶ 16} Five days before the hearing, the Supreme Court of Ohio notified the probate court that Ms. Koeberer had filed an affidavit of disqualification against probate Judge Jeffrey D. Mackey, causing a stay of the hearing until it ruled on the matter. On May 5, 2022, appellees filed a response opposing Ms. Koeberer's request to supplement the record, arguing that it was frivolous.

{¶ 17} The Supreme Court of Ohio denied Ms. Koeberer's request to disqualify Judge Mackey on June 10, 2022, and the magistrate then set a new hearing date of September 13, 2022.

{¶ 18} Ms. Koeberer filed a motion captioned "Motion for Frivolous Filing pursuant to R.C. 2323.51" on August 10, 2022. She argued that appellees' motions for sanctions were themselves frivolous because a probate proceeding did not qualify as a civil action, which she asserted was a "condition precedent" to any sanction under the statute. (Aug. 10, 2022 Mot. for Frivolous Filing at ¶ 9.) She did not seek any remedy allowed under R.C. 2323.51, however, only "dismissal" of pending motions for sanctions. *Id.* at ¶ 10. In appellees' response to the motion, they argued that Ms. Koeberer's motion itself was yet another example of frivolous conduct: "A motion filed pursuant to R.C. 2323.51 not seeking fees, court costs, or other expenses, and seeking only unavailable remedies is a frivolous motion." (Aug. 15, 2022 Joint Memo in Opp. at 2.) Appellees also countered Ms. Koeberer's assertion that the proceeding was not a civil action, demonstrating that Ms. Koeberer's filings themselves had repeatedly invoked the Ohio Rules of Civil Procedure, as well as prior sanctions awarded under R.C. 2323.51. *Id.* at 4.

{¶ 19} On August 29, 2022, the magistrate granted the motion to exclude or limit Ms. Koeberer's proposed witnesses in part, confined the scope of any expert testimony to issues under R.C. 2323.51, and noted that her response to appellees' motion had "little to no substantive connection" to the arguments they had raised. (Aug. 29, 2022 Mag.'s Order at 1.)

{¶ 20} Two weeks before the scheduled hearing, Ms. Koeberer filed a notice, supported by a letter from her doctor, that she would be unavailable to testify. According to the doctor's letter, she suffered from "vocal cord dysfunction" that made "it absolutely impossible for her to withstand testifying verbally." (Aug. 11, 2022 Letter from Damon M. Whitfield, D.O., attached to Aug. 30, 2022 Notice of Unavailability of Witness.) At a status conference on the matter, Ms. Wasserman "offered to listen to her client's whispers at the hearing and transcribe them for the record herself," which the magistrate considered "a wholly unacceptable solution." (Sept. 7, 2022 Mag.'s Order at 1.) Instead, the magistrate ordered that Ms. Koeberer "direct[] her testimony to a stenographer" who would "transcrib[e] what verbal answers [she] is able to whisper," as well as "note" any "nonverbal responses, such as nodding or shaking her head after yes-or-no questions." *Id.* at 1-2.

{¶ 21} One week before the hearing, Ms. Wasserman filed a motion on behalf of Ms. Koeberer to disqualify the magistrate. Ms. Wasserman alleged that she had "personally" met with the magistrate on June 29, 2020, to "discuss a transition plan for

[her] retirement" from private practice that included "resigning from all litigation" and referring her cases to other probate attorneys. (Sept. 8, 2022 Mot. to Disqualify at 1.)[2]  She acknowledged that she and the magistrate had "not discussed" the present case.  *Id.*  Nevertheless, Ms. Wasserman argued that the magistrate should be disqualified because he "received personal information about" her, namely, the retirement plan that she had "submitted to him for feedback."  *Id.*  She accused the magistrate of engaging in "hostile actions" that had "resulted in prejudice" to both herself and Ms. Koeberer and improperly discussing her retirement plan with the former probate judge.  *Id.* at 2.  She did not identify those actions other than allege that the magistrate's failure to rule on a motion to compel before the probate court issued a continuance of the hearing on November 19, 2021, caused a "delay" that "once again shifted the cost of preparing after a year for a hearing."  *Id.*

{¶ 22}  The probate court denied the motion to disqualify the next day.  In its ruling, the court noted that because the magistrate and Ms. Wasserman had not discussed the present case, their meeting satisfied the exception to the prohibition on ex parte contact under Rule 2.9(A)(1) of the Ohio Code of Judicial Conduct where the communication "does not address substantive matters or issues on the merits . . . provided the judge reasonably believes that no party will gain a procedural, substantive, or tactical advantage as a result . . ." (Sept. 7, 2022 Jgmt. Entry at 2.)  In addition, the court found that the motion had "failed to establish a connection between any personal information" concerning Ms. Wasserman's "retirement transition plan" and the magistrate's "allegedly biased factual findings and legal conclusions." *Id.* at 3.

{¶ 23} The parties and counsel finally convened for a hearing on the motions alleging frivolous conduct on September 13, 2022.  However,  Ms. Wasserman moved to withdraw as counsel for Ms. Koeberer because she had been named as a third-party defendant in a pending case in the Franklin County Court of Common Pleas, creating a conflict that prevented her from continuing to represent Ms. Koeberer.  Ms. Koeberer, represented by another attorney, was the plaintiff in the case and had named Mr. Weir as a defendant.  He, in turn, filed a third-party complaint against Ms. Wasserman in that case.[3] The magistrate granted Ms. Wasserman's motion to withdraw and continued the hearing

---

[2] The motion was actually filed on September 6, 2022, but was timestamped as having been filed on September 8, 2022.

[3] Although Mr. Weir filed the third-party complaint against Ms. Wasserman on May 31, 2022, she did not inform the magistrate of the conflict until the date of the September 13, 2022 hearing.

until November 14, 2022, to allow Ms. Koeberer time to obtain new counsel. (Sept. 16, 2022 Order.)

{¶ 24} Ms. Koeberer requested a continuance on November 8, 2022, stating that she had "not been able to secure counsel" after having contacted over ten different attorneys, "all" of whom had conflicts. (Nov. 8, 2022 App. for Continuance.) The next day, the magistrate issued an order stating that the November 14, 2022 hearing would "begin as planned" unless all other parties agreed to the continuance Ms. Koeberer requested. (Nov. 9, 2022 Mag.'s Order.)

{¶ 25} Ms. Koeberer filed a complaint seeking a writ of prohibition in the Supreme Court of Ohio on November 8, 2022 against Judge Mackey, the probate court judge. She sought an order preventing the probate court from proceeding on the hearing, alleging that it lacked jurisdiction. The magistrate received the complaint the morning of the hearing and, citing "an abundance of caution," continued it until December 12, 2022. (Nov. 14, 2022 Mag.'s Order.)

{¶ 26} Ms. Koeberer filed a motion in the Supreme Court of Ohio seeking a stay of the hearing on December 8, 2022. On November 14, 2022, the magistrate ordered another continuance of the hearing, until February 1, 2023, noting that the Supreme Court of Ohio had not yet ruled on Ms. Koeberer's request for a writ of prohibition. (Dec. 14, 2022 Mag.'s Order.) Another continuance followed on February 2, setting the hearing for March 21, 2023.

{¶ 27} The Supreme Court of Ohio dismissed Ms. Koeberer's complaint on February 22, 2023. The same day, the probate court received notice that Ms. Koeberer had filed another original action in the Supreme Court, a writ of mandamus, seeking an order directing the probate court to disqualify Mr. Weir. (Feb. 15, 2023 Summons & Compl. for Writ of Mandamus.) Although Ms. Koeberer filed the complaint pro se, Ms. Wasserman had assisted her with its preparation. *Id.*

{¶ 28} The day before the March 21 hearing, Ms. Koeberer filed a notice informing the probate court that, based on her doctor's "advice," she would "not be attending the hearing" the next day. (Mar. 20, 2023 Notice of Non-Appearance.) Neither Ms. Koeberer nor Ms. Wasserman personally attended the hearing, although Ms. Wasserman's attorney did attend.

{¶ 29}  Mr. Weir's attorney, Robert Dunn, testified that he was asked to represent Mr. Weir in his capacity as trustee of the Elizabeth Koeberer Trust after Ms. Koeberer had filed the Motion to Reopen.  (Mar. 21, 2023 Tr. at 21.)  Ms. Koeberer's basis for reopening the estate "was hard to quite understand," but because he "was representing a fiduciary" with "certain duties under Ohio law," Mr. Dunn began "trying to have a dialogue" with both Ms. Koeberer's first attorney and then Ms. Wasserman in an attempt "to resolve the overall issue that she had with [the] least amount of expense to the trust" as possible.  *Id.* at 22-23.  He identified a number of emails documenting unsuccessful attempts to have a meeting between his client, Ms. Koeberer, and Ms. Wasserman in an effort to avoid "protracted and expensive litigation."  *Id.* at 24.  Although a meeting was eventually scheduled, "at the last minute, Ms. Wasserman called it off."  *Id.*

{¶ 30}  Mr. Dunn testified that he filed the motion for sanctions because not only did the Motion to Reopen "not have a legal basis" and was "untimely," but the "snowball" of subsequent filings, attempts to disqualify the magistrate and the judge, and the original actions filed in the Supreme Court of Ohio as the litigation went on raised a "reasonable inference" that the conduct arose from "an attempt to interpose delay and avoid a hearing on the matter."  *Id.* at 27-29.  In the midst of all the filings, Mr. Dunn asked to "meet" and "talk about the trust administration, talk about ways to resolve any concerns that Ms. Koeberer had."  *Id.* at 30.  Mr. Dunn thought that the parties "were going to have a meeting and discuss the issues, but that again fell apart."  *Id.*  Mr. Dunn testified that one reason for filing the motion for sanctions was his client's duty, as trustee, "to defend the trust, to try to recoup expenses that have been needlessly expended."  *Id.*  Mr. Dunn also testified about the billing practices and hourly rates relevant to the matter, as did Mr. Wilson and Ms. Strom's attorneys.

{¶ 31}  In a decision issued on April 6, 2023, the magistrate ruled on the parties' "multiple motions."  (Apr. 6, 2023 Mag.'s Decision at 1.)  The magistrate first denied Ms. Koeberer's motion to take judicial notice of filings in the Supreme Court of Ohio concerning "a different case" pending in the Franklin County Court of Common Pleas.  (*Id.* at 17.)  The magistrate reasoned that "it would be improper to take judicial notice of something on the docket of the state's highest court before the matter has been ruled on," and that the information in question was "duplicative of evidence" already in the record.  *Id.*

{¶ 32} Second, the magistrate rejected Ms. Koeberer's argument that the probate court lacked jurisdiction to award attorney fees and costs for frivolous conduct under R.C. 2323.51 because the Motion to Reopen initiated a special statutory proceeding that did not qualify as a "civil action" under the statute. *Id.* at 18. In the magistrate's view, "a false equivocation" was the premise of this argument because "estates are civil actions as used in R.C. 2323.51." *Id.* Furthermore, even if this argument held, "Ms. Koeberer's conduct would still amount to litigation activity" sanctionable under the statute. *Id.* at 19. The magistrate also denied Ms. Koeberer's motion to "dismiss" Mr. Weir due to an alleged "impermissible conflict of interest because he previously represented [her] as an attorney," noting that Mr. Weir was not representing anyone but was a party in the case. *Id.* at 20.

{¶ 33} The magistrate then turned to the issue of whether appellees had demonstrated frivolous conduct under R.C. 2323.51 that merited sanctioning Ms. Koeberer and Ms. Wasserman. The magistrate first reviewed the grounds Ms. Koeberer asserted in the Motion to Reopen for reopening her mother's estate. Her assertion that she was under a legal disability, as required under R.C. 2131.02(D) to toll the statute of limitations, was "not true," and the statute unambiguously applied only to guardianships. *Id.* at 23. Ms. Koeberer presented "no good faith legal argument" to justify applying the statute to a trust. *Id.* "No reasonable attorney would construe R.C 2131.02(D) in any other way." *Id.* The magistrate concluded that her argument for not applying the statute of limitations was frivolous.

{¶ 34} The magistrate also addressed the argument that the misspelling of Ms. Koeberer's name, and the signature line on the waiver of notice of probate of will identifying her as "Elizabeth W. Koeberger aka Elizabeth Koeberer" amounted to fraud. Noting that she had "admitted that it was her signature" on the waiver, the magistrate considered the argument "without merit." *Id.* This argument as well constituted frivolous conduct, according to the magistrate. So too was her attempt to have the estate reopened under Civ.R. 60(B), because the Motion to Reopen was untimely and no fraud warranted relief under the rule.

{¶ 35} The magistrate also addressed Ms. Wasserman's role in pursuing these frivolous legal theories:

> [N]o reasonable attorney would have presented the claims found in Ms. Koeberer's motion to reopen and then continued the litigation through the eventual judgment entry.

>     Ms. Koeberer's filings were all drafted by Attorney Wasserman.
>     Attorney Wasserman is a lawyer in good standing with
>     significant experience in probate matters and should have
>     recognized that the statute of limitations prohibited the filing
>     of a will contest action. Perplexingly, Attorney Wasserman
>     could have helped Ms. Koeberer file any number of actions
>     against the Trust not barred by the statute of limitations, such
>     as for an accounting, to achieve more of her actual goals.
>     However, she did not do so, and Attorney Wasserman is equally
>     culpable for all of Ms. Koeberer's frivolous filings.

*Id.* at 25.

{¶ 36} The magistrate further noted that Ms. Wasserman's filings were "frequently incomprehensible," and multiple attorneys at the probate court read them "multiple times to make any sense of the legal arguments," to no avail. *Id.* at 25-26. The allegation that the misspelling of Ms. Koeberer's name was "the source of some ongoing confusion is unfathomable; neither Ms. Koeberer, the other parties, nor [the probate court] has ever understood the Trust or Decedent's will to refer to anyone other than Ms. Koeberer, despite the scrivener's error." *Id.* at 26. There was no "way to translate Ms. Koeberer's frustration with the misspelling of her name into a legally relevant argument." *Id.* In the magistrate's opinion, Ms. Wasserman had failed to use "professional judgment" because she "uncritically incorporated Ms. Koeberer's complaints about [appellees] into her motion regardless of the chances of success in court or even having a baseline level of merit." *Id.* The magistrate concluded that because Ms. Koeberer would have been unable to make "this frivolous matter last so long or cost so much money" without Ms. Wasserman's representation, she was "more culpable" than Ms. Koeberer for the frivolous arguments asserted in the Motion to Reopen. *Id.* at 27.

{¶ 37} The magistrate then addressed their "conduct during [appellees'] prosecution of the motions for sanctions," describing it as "some of the most egregious behavior by an attorney and a party this magistrate has seen in over four decades of probate practice, both in private practice and on the bench." *Id.* The magistrate cataloged a "select review" of 27 events in the procedural history of the case to show how

>     Proponents repeatedly filed last minute continuances that kept
>     the issue of sanctions open for nearly two years; Proponents
>     attempted to disqualify nearly every other lawyer on this case,
>     including opposing counsel, Judge Mackey, and this
>     magistrate, all of which were denied as without merit by

> various courts; Proponents filed two extraordinary writs in the Supreme Court of Ohio; Proponents attempted to retrieve discovery protected by attorney-client privilege; Proponents attempted to relitigate the motion to reopen and motion to set aside; Ms. Koeberer made a dubious-at-best statement that she was unable to retain new counsel when she had counsel for an almost identical case in [the] General Division; and, when the time for the hearing finally came, failed to appear.

*Id.* at 30-31.

{¶ 38} These "tactics," in the magistrate's assessment, were both "the definition of dilatory and . . . an abuse of the legal process to avoid the consequences of their original frivolous conduct." *Id.* at 31. The magistrate was "especially troubled" by the actions of Ms. Wasserman, who herself was a defendant in the related case in the Franklin County Court of Common Pleas: "Even before she moved to resign as counsel due to a conflict of interest, Attorney Wasserman had an actual conflict with her client because a motion for sanctions directly puts an attorney against their client in an effort to place more of the blame on each other." *Id.* In addition, many of the filings related to the issue of sanctions "were attempts to relitigate the original frivolous conduct," causing appellees to "incur[] far more attorney fees than they otherwise would." *Id.* Thus, the magistrate concluded, the frivolous conduct of Ms. Koeberer and Ms. Wasserman encompassed not only the filing and litigation of the Motion to Reopen, but their conduct during the prosecution of appellees' motions for sanctions as well.

{¶ 39} Finally, the magistrate addressed the reasonableness of appellees' fee request. The magistrate subtracted the amounts invoiced for the litigation in the Supreme Court of Ohio, not believing that the probate court had "the authority to grant an award of fees for work incurred" there, and applied several other minimal reductions to the request. *Id.* at 33. As a result, the magistrate ordered Ms. Koeberer and Ms. Wasserman to jointly and severally pay Mr. Wilson's reasonable attorney fees and costs of $80,349.44 and Ms. Strom's reasonable attorney fees and costs of $35,316.50. The magistrate ordered Ms. Wasserman individually to pay Mr. Weir's reasonable attorney fees and costs of $64,675.46.

{¶ 40} The probate court overruled Ms. Koeberer and Ms. Wasserman's objections to the magistrate's decision, stating that they had "repeatedly engaged in objectively frivolous conduct since the time this case was reopened, and the expenses the magistrate

therefore awarded . . . were both reasonable and warranted." (Dec. 27, 2023 Jgmt. Entry at 3.) Accordingly, the court adopted the magistrate's decision and entered judgment in favor of appellees on their request for sanctions under R.C. 2323.51.

{¶ 41} In spite of the conflict that had previously caused her to withdraw as counsel for Ms. Koeberer, Ms. Wasserman resumed her representation of Ms. Koeberer in order to appeal the sanctions award and the denial of the Motion to Reopen. (Jan. 23, 2024 Notice of Appearance; Jan. 23, 2024 Notice of Appeal.) They assert the following assignments of error:

[I.] Error in Dismissal of Motion to Reopen

[II.] Executor is a Necessary and Indispensable Party

[III.] Identity Theft is a Substantial Right and Not a Frivolous Issue

[IV.] Probate Court erred in not disqualifying Robert E. Weir

[V.] Probate Court Relinquished Jurisdiction of Subject Matter Jurisdiction

[VI.] Probate court erred in ordering sanctions against appellant and her counsel

[VII.] Probate Court erred in not taking judicial notice of Franklin County Court of Common Pleas Case 22CV002604 and Municipal Court Case 2010TR D 189964

## II. Analysis

{¶ 42} None of appellants' assignments of error provide "reference to the place in the record where each error is reflected," as required under App.R. 16(A)(3). The third, fourth, and fifth assignments of error are not consistent with their presentation in the argument section of appellants' brief. There, the third assignment of error addresses the probate court's alleged error when failing to disqualify Mr. Weir, the fourth assignment of error argues that the probate court lacked subject-matter jurisdiction to order sanctions under R.C. 2323.51 because no party appeared as executor, and the fifth assignment of error asserts that the probate court "relinquished jurisdiction over [the] trust" with reference to a different probate case. (Appellants' Brief at 50.) In addition, many arguments asserted do not address the assignment of error under which they appear, or the arguments relate to other assignments of error.

{¶ 43} "An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the

contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies" is a mandatory portion of any appellate brief. App.R. 16(A)(7). Appellants' brief fails to comply with this and other requirements of the Ohio Rules of Appellate Procedure. On nearly every page of their brief, arguments fail to cohere, irrelevant citations abound, and accusations of malfeasance against other parties appear that are untethered to any admissible evidence in the record or the probate court's findings of fact. Abundant grammatical errors compound the difficulty of understanding many of appellants' assertions. "Nothing about the Brief comports with Appellate Rule 16's requirements," appellees note. (Joint Merit Brief of Appellees at 19.) In spite of these deficiencies, we will attempt to address the assignments of error as presented.

{¶ 44} After that discussion, we will address appellants' pending motion, filed on March 25, 2025, to supplement the record on appeal.

## A. First Assignment of Error

{¶ 45} In the first assignment of error, Ms. Koeberer argues that the probate court erred by denying the Motion to Reopen. As a preliminary matter, we note that the Motion to Reopen asserted no specific procedural or statutory basis for granting for the relief requested. Ms. Koeberer sought to have the waiver of notice of probate she had signed set aside, as well as the administrator's entry of the certification of that waiver. R.C. 2017.19 governs the notice of admission of a will to probate, but the statute contains no provision for vacating or setting aside a valid waiver. Ms. Koeberer also requested two other, more substantive forms of relief, which the probate court did address: an order vacating the probate court's entry approving and settling the accounts of her mother's estate and a "find[ing]" that the statute of limitations under R.C. 2107.76 did not bar her from bringing an action to contest the will. (Mot. to Reopen at 1.)

{¶ 46} Under R.C. 2109.35, an "order of the probate court upon the settlement of a fiduciary's account shall have the effect of a judgment and may be vacated only" in three circumstances: 1) fraud, if a motion is filed "within one year after discovery of the existence of the fraud;" 2) "good cause . . . other than fraud, upon motion of any person affected by the order who was not a party to the proceeding in which the order was made and who had no knowledge of the proceeding in time to appear in it;" and 3) "good cause shown upon motion of the fiduciary, if the motion is filed prior to the settlement of the account showing that the fiduciary has fully discharged his trust." R.C. 2109.35(A)—(C). The Motion to

Reopen cited none of these provisions as grounds for vacating the entry of account. This is logical, because Ms. Koeberer's allegations do not satisfy any basis for vacating the order under R.C. 2109.35. Although she alleged that the misspelling of her name amounted to "extrinsic fraud," the Motion to Reopen was filed over three years after the probate court filed the entry. (Motion to Reopen at 2.) Ms. Koeberer was "a party to the proceeding[s]" and therefore could not make a showing of "good cause" under R.C. 2109.35(B). Nor could she invoke R.C. 2109.35(C), as she was not the fiduciary, and the estate had long been settled. As a matter of law, the specific statutory remedy for the relief Ms. Koeberer sought was closed to her. But that was not the only relief she asked from the probate court.

{¶ 47} As the Motion to Reopen made clear, Ms. Koeberer intended "to proceed to file a will contest without further delay" if the probate court agreed to reopen her mother's estate. (Mot. to Reopen at 3.) A will contest is defined as a civil action under R.C. 2107.71. "The Rules of Civil Procedure govern all aspects of a will contest action," unless provided otherwise in R.C. 2107.71 through 2107.77. R.C. 2107.72(A). Civil Rule 73 contains particular provisions concerning venue and service that apply "to proceedings in the probate division of the court of common pleas," and further states that "all of the Rules of Civil Procedure, though not specifically mentioned in this rule, shall apply except to the extent that by their nature they would be clearly inapplicable." Civ.R. 73(A). Because the probate court's entry approving the account had, under R.C. 2109.35, "the effect of a judgment," Civ.R. 60(B), which allows a party to obtain relief from final judgment, seems a plausible procedural mechanism for vacating the order. Indeed, probate courts have entertained motions brought under Civ.R. 60(B) when a party seeks to reopen an estate.[4]

---

[4] Ohio's appellate courts are not completely consistent concerning the propriety of using Civ.R. 60(B) when a party alleges fraud under R.C. 2109.35. This court has affirmed a probate court's denial of a motion alleging fraud as the basis for vacating the final settlement of an account under Civ.R. 60(B) as untimely because it was not filed within one year, as required by R.C. 2109.35. *Huntington Trust Co. v. Chubet*, 1997 Ohio App. LEXIS 6114, *8 (10th Dist. Nov. 18, 1997) ("The order of the probate court approving and settling an account has the effect of a final judgment and can be vacated only through the procedure of R.C. 2109.35."). However, in *In re Guardianship-Trusteeship of Coletts*, 1988 Ohio App. LEXIS 4402, *16 (4th Dist. Nov. 3, 1988), the Fourth District Court of Appeals noted that R.C. 2109.35 "predated Civ. R.60(B), [and] in effect, is a statute of limitations that is 'substantive' in nature since it creates, defines, and regulates the rights of persons affected by the probate court judgment settling a fiduciary's account to vacate such judgment on the basis of fraud, limiting such right to filing a motion 'within one year after discovery of the existence of the fraud.' " Because of this conflict, "to the extent that Civ. R. 60(B)(5) enlarges such substantive statutory right by allowing for motions made within a reasonable time which might be after one year after discovery of the existence of the fraud, the rule is inapplicable and R.C. 2109.35(A) applies." *Id*. Here, we take no position on this inconsistency, because the Motion to Reopen did not seek relief under R.C. 2109.35.

*E.g.*, *In re Estate of Burdette*, 2016-Ohio-5866, ¶ 21 (2d Dist.) (holding that "[a] Civ.R. 60(B) motion for relief from judgment is an appropriate method of reopening an estate to challenge a distribution based on a mistake of fact or law"); *In re Estate of Dinsio*, 2004-Ohio-6036, ¶ 39 (7th Dist.) (holding that a motion to set aside a certificate of transfer of property that was in the inventory of a long-closed estate could be analyzed as well as a motion for relief from judgment under Civ.R. 60(B)).

{¶ 48} The Motion to Reopen did not invoke Civ.R. 60(B) as grounds for relief. Appellees' Memorandum in Opposition addressed the motion as if it had, and Ms. Koeberer's reply cited the rule as an additional basis for granting her motion. Appellees cited cases in which parties unsuccessfully attempted to use the rule to collaterally attack a probate court's entry approving and settling an account under R.C. 2109.32. (Jan. 15, 2021 Combined Memo in Opp. at 5, citing *Kemp v. Markovich*, 1983 Ohio App. LEXIS 12858 (8th Dist. Nov. 3, 1983) and *Carvell v. Kozar*, 1991 Ohio App. LEXIS 2772 (8th Dist. June 13, 1991).)

{¶ 49} Although Ms. Koeberer did not assert an argument under Civ.R. 60(B) until filing her reply (perhaps prompted by its invocation in appellees' response opposing the Motion to Reopen), the probate court did analyze her motion under the rule. Thus, we will analyze the probate court's decision under the framework applicable to Civ.R. 60(B), which requires deference to the ruling unless the probate court abused its discretion. *E.g.*, *Lundeen v. Turner*, 2022-Ohio-1709, ¶ 11 (reviewing "a decision denying a Civ.R. 60(B) motion for an abuse of discretion").

{¶ 50} Civil Rule 60(B) states:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons:
>
> (1)  Mistake, inadvertence, surprise or excusable neglect;
>
> (2)  Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B);
>
> (3)  Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party;
>
> (4)  The judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed

or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or

(5)  Any other reason justifying relief from the judgment.

{¶ 51}  "To prevail on his motion under Civ. R. 60(B), the movant must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ. R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ. R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken." *GTE Automatic Elec., Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146, 150-151 (1976).

{¶ 52}  The first prong of *GTE* requires the assertion of "a meritorious defense or claim" if the judgement is vacated.  *Id.*  It is here that Ms. Koeberer's intention to assert a will contest claim under R.C. 2107.71 enters the discussion; the Motion to Reopen described no other relevant claim or defense and specifically argued that her claim was not time-barred by the statute of limitations under R.C. 2107.76.  Once a fiduciary has filed a certificate with the probate court provided notice to all interested persons, as required by R.C. 2107.19, any "person who has received or waived the right to receive the notice" must file a will contest action under R.C. 2107.71 within three months.  R.C. 2107.76.  The Motion to Reopen acknowledges this limitation period and does not assert that Ms. Koeberer had complied with it.  (Mot. to Reopen at 7.)  Indeed, the motion concedes that the limitations period had "technically ended" at the end of January 2014, over four years earlier.  *Id.*

{¶ 53}  Instead, Ms. Koeberer argued that she was under a legal disability that tolled the limitations period.  "A person under any legal disability nevertheless may commence an action permitted by section 2107.71 of the Revised Code to contest the validity of the will within three months after the disability is removed,"  R.C. 2107.76 states.  The General Assembly has expressly defined a person with a "legal disability" under Chapter 2107 as one who is any of the following: under 18 years of age, "of unsound mind," "in captivity,"[5] or "under guardianship of the person and estate, or either."  R.C. 2131.02.  Ms. Koeberer was "entitled" to be recognized as being under a legal disability as a person subject to a

---

[5] For purposes of R.C. 2131.02, a person "in captivity" is generally understood as a person in pretrial detention, not one who is incarcerated after a criminal conviction. *See Evans v. Evans-Sanford*, 2020-Ohio-5315, ¶ 29 (4th Dist.) (citing cases where legal disability under R.C. 2131.02 "involved pretrial detainments of persons awaiting trial and who were cloaked with a presumption of innocence").

guardianship because her status as a beneficiary of the trust created by her mother's will "would qualify as a less restrictive alternative to a guardianship," she argued.  (Mot. to Reopen at 15.)

{¶ 54}  Ms. Koeberer's argument is, in essence, an invitation to amend the definition of legal disability under R.C. 2131.02 to include a person who is the beneficiary of a trust. The Supreme Court of Ohio has held that "if the General Assembly could have used a particular word in a statute but did not, we will not add that word by judicial fiat." *Hulsmeyer v. Hospice of Southwest Ohio, Inc.*, 2014-Ohio-5511, ¶ 26.  Nor may this court. A person's status as a trust beneficiary is in no way comparable to being declared the ward of a guardianship, which only results after a probate court determines that "clear and convincing evidence" presented at a hearing, where the due process rights of the ward are protected, demonstrates incompetency.  R.C. 2111.02(C)(3).  Ms. Koeberer, although "under the stress of a serious physical health diagnosis," was by her own admission "competent" during the administration of her mother's will.  (Mot. to Reopen at 5.)  The probate court did not err when it rejected this argument.

{¶ 55}  Even if Ms. Koeberer had satisfied the first prong of the *GTE* test, her motion was untimely as well.  A motion for relief from judgment must be filed within one year under its first three provisions, or, under the catch-all provision, "within a reasonable time" of the entry of judgment.  *GTE*, 47 Ohio St.2d at 150.  Neither in the Motion to Reopen nor in her appellate briefing does she address the issue of timeliness.  The probate court did not err when ruling that the motion was untimely.

{¶ 56}  In this appeal, Ms. Koeberer's brief fails to make any coherent argument concerning the probate court's alleged error when denying her motion.  In the section captioned "Error in Dismissal of Motion to Reopen," she asserts that the probate court "applied the incorrect standard of review" when deciding it, states that the executor of her mother's estate "was an indispensable and necessary party who has only entered an appearance individually," and claims that she herself "was required to correct her name first in [the] probate court which her brother as Executor had refused to do."  (Appellants' Brief at 33.)  To the extent that the phrase "the incorrect standard of review" asserts that the probate court applied the wrong legal standard, our discussion so far addresses that standard, which the probate court applied correctly.  The remainder of her arguments do not relate to that standard.  Nor does the remainder of the section purportedly addressing

the first assignment of error, which contains photocopied portions of the docket from this and a case in the Franklin County Court of Common Pleas, the record from the probate court, and arguments challenging the probate court's subject-matter jurisdiction to award sanctions under R.C. 2323.51. We will address the latter below. The first assignment of error is overruled.

### B. Second Assignment of Error

{¶ 57} In the second assignment of error, Ms. Koeberer argues that "the probate court erred as a matter of law and abused its discretion when it permitted Edson H. Wilson to enter an appearance individually to contest [the] Motion to Reopen." (Appellants' Brief at 46.) She argues that the absence of an executor "renders proceedings void ab initio" in the probate court, and that without an executor, the probate court had "no subject matter jurisdiction." *Id.* It is difficult to discern a logical progression in this argument. Ms. Koeberer herself invoked the jurisdiction of the probate court when she filed the Motion to Reopen, yet she now argues that the entire matter is void ab initio—"[n]ull from the beginning"—due to a lack of subject-matter jurisdiction. *Black's Law Dictionary* (12th Ed. 2024). She does not explain how the probate court's subsequent ruling allowing Mr. Edson to intervene somehow divested it of subject-matter jurisdiction. The case Ms. Koeberer cites in support of her argument, *Santomauro v. McLaughlin*, 2022-Ohio-2441, provides no guidance. In *Santomauro*, the Supreme Court of Ohio held that the general division of a court of common pleas had "patently and unambiguously exceeded its jurisdiction" when it issued an order directed at two coexecutors of their father's estate because, under R.C. 2101.24(A)(1)(c), "the power to direct and control the coexecutors' conduct lies exclusively within the probate court's subject-matter jurisdiction, not the general division's." *Id.* at ¶ 20. The holding has no relevancy to the present appeal.

{¶ 58} To the extent that Ms. Koeberer argues that the probate court erred by not appointing Mr. Wilson the executor of her mother's estate, the court could not do so without an open estate to administer. *See* R.C. 2113.06 (authorizing the probate court to grant letters of administration after a will is admitted to probate). Furthermore, Ms. Koeberer did not present this argument to the probate court in either in the Motion to Reopen or the objections to the magistrate's decision that she raised. (*See* June 1, 2021 Objs.) Accordingly, she has forfeited raising this argument on appeal. *E.g.*, *State ex rel. Food & Water Watch v. State*, 2018-Ohio-555, ¶ 16 (per curiam) (holding that because appellants

had not raised arguments in their appellate briefs previously "in their objections to the magistrate's decision, the arguments have been waived on appeal"). Appellants have identified no discernible error in the probate court. Accordingly, the second assignment of error is overruled.

### C. Third Assignment of Error

{¶ 59} As noted previously, as initially presented, the third assignment of error ("Identity Theft is a Substantial Right and Not a Frivolous Issue") is inconsistent with the argument section of the brief, which challenges the probate court's denial of her motion to disqualify Mr. Weir. Ms. Koeberer levels a number of accusations against Mr. Weir in her brief: he failed to "present[] a written waiver of conflict of interest and modified [her] name without her authorization," he threatened to withhold and did withhold distributions from the trust, as well as "took inconsistent detrimental actions" while representing "multiple parties," the latter presumably a reference to Mr. Weir's role as the estate's attorney before representing the trust. (Appellants' Brief at 47.)

{¶ 60} However, Ms. Koeberer never filed a motion to disqualify Mr. Weir in the probate court. She filed a motion to disqualify Mr. Weir's attorneys on November 12, 2021, captioned "Motion for Disqualification of Counsel Jane Higgins Marx, Attorney at Law and Carlile Patchen Murphy LLP, and Robert R. Dunn and Bailey Cavalieri LLP." In the memorandum in support of the motion, she alleges that his representation of "the Executor and the beneficiaries in this estate" created conflicts of interest, but the arguments for disqualification are directed only at his attorneys. (Nov. 12, 2021 Mot. for Disqualification of Counsel at 6.)

{¶ 61} Furthermore, Mr. Weir was a party to the case as trustee because the trust was a beneficiary of the will Ms. Koeberer sought to challenge. Her criticisms pertain to his alleged actions in that role, but the present appeal did not arise under R.C. 5807.06, which governs the removal of a trustee. For the foregoing reasons, the third assignment of error is overruled.

### D. Fourth Assignment of Error

{¶ 62} The fourth assignment of error asserts that the probate court did not have subject-matter jurisdiction under R.C. 2323.51 to award sanctions "where no executor has appeared and there are no assets in the estate," without identifying any place in the record containing error. (Appellants' Brief at 49.) Appellants assert as well that "[i]dentity theft

is not frivolous," but the relevance of the statement is unclear. *Id.* Nor does this statement remedy the failure to "refer[] to the place in the record where each error is reflected," as required by App.R. 16(3). Appellants raise the issue of the probate court's subject-matter jurisdiction in the sixth assignment of error as well, so it will not be addressed here. The fourth assignment of error is overruled.

### E. Fifth Assignment of Error

{¶ 63} At the beginning of appellants' brief, the fifth assignment of error is presented as "Probate Court Relinquished Jurisdiction of Subject Matter Jurisdiction," a statement we are not able to understand. (Appellants' Brief at 49.) In the argument section of the briefing, the fifth assignment of error states: "Probate Court relinquished jurisdiction over trust," and the ensuing argument is not comprehensible. *Id.* at 50. Appellants reference a different probate court case by number, as well as an action in the Franklin County Court of Common Pleas, and assert that Ms. Koeberer "had a right to take action" by filing it. *Id.* at 51. The statements made to support the fifth assignment of error are either unintelligible or are irrelevant to the present case. At any rate, no error of the probate court is described, nor is a place in the record containing error identified, as required by App.R. 16(3). The fifth assignment of error is overruled.

### F. Sixth Assignment of Error

{¶ 64} In the sixth assignment of error, appellants assert that the probate court had "no subject matter jurisdiction to impose sanctions" under R.C. 2323.51. *Id.* at 53. Again, they present a number of statements that are difficult to parse, as well as accusations against Mr. Weir and the administration of the trust, all of which are irrelevant to the error alleged.

{¶ 65} "Subject-matter jurisdiction refers to the constitutional or statutory power of a court to adjudicate a particular class or type of case." *State v. Harper*, 2020-Ohio-2913, ¶ 23, citing *Pratts v. Hurley*, 2004-Ohio-1980, ¶ 11-12, 34. "Subject matter jurisdiction is a court's power to hear and decide a case on the merits." *State ex rel. Tubbs Jones v. Suster*, 1998-Ohio-275, ¶ 11, citing *Morrison v. Steiner*, 32 Ohio St.2d 86 (1972), paragraph one of the syllabus. Article IV, Section 4(B) of the Ohio Constitution states: "The courts of common pleas and divisions thereof shall have such original jurisdiction over all justiciable matters and such powers of review of proceedings of administrative officers and agencies as may be provided by law." This provision "grants exclusive authority to the General

Assembly to allocate certain subject matters to the exclusive original jurisdiction of specified divisions of the courts of common pleas." *State v. Aalim*, 2017-Ohio-2956, ¶ 2. The subsequent subsection specifies that "there shall be a probate division" within the state's courts of common pleas. Ohio Const., art. IV, § 4(C).

{¶ 66} R.C. 2323.51(B)(1) states that "at any time not more than thirty days after the entry of final judgment in a civil action or appeal, any party adversely affected by frivolous conduct may file a motion for an award of court costs, reasonable attorney's fees, and other reasonable expenses incurred in connection with the civil action or appeal." The purpose of the statute is "to deter abuse of the judicial process and discourage egregious, overzealous, unjustifiable and frivolous actions" by litigants and their attorneys. *Calypso Asset Mgt., L.L.C. v. 180 Industrial, L.L.C.*, 2024-Ohio-2339, ¶ 19 (10th Dist.).

{¶ 67} Appellants raise the same argument on appeal challenging subject-matter jurisdiction that they brought before the probate court: they "never filed a civil action in probate court . . . only a Motion to Reopen," and "without a summons and complaint being filed," there was no civil action that they argue is necessary to award sanctions under R.C. 2323.51. (Appellants' Brief at 57-58.)

{¶ 68} This argument appears premised on the statute's use of the word "civil action," which appears both in R.C. 2323.51(B)(1) as quoted above, as well as in its definition of "conduct," which states: "The filing of a civil action, the assertion of a claim, defense, or other position in connection with a civil action, the filing of a pleading, motion, or other paper in a civil action, including, but not limited to, a motion or paper filed for discovery purposes, or the taking of any other action in connection with a civil action[.]" R.C. 2323.51(A)(1)(a). Under Civ.R. 3(A), a civil action "is commenced by filing a complaint," but appellants point out that they commenced this litigation by filing a motion. Thus, they argue, the action is not a civil action in which sanctions may be awarded.

{¶ 69} Appellants' argument elevates form over substance and ignores caselaw demonstrating that appellate courts, including this court, review sanctions imposed by probate courts under R.C. 2323.51. *See Taneff v. Lipka*, 2019-Ohio-887, ¶ 69 (10th Dist.) (affirming probate court's finding that party "willfully violated Civ.R. 11 and R.C. 2323.51"); *Estate of Garza v. Onesto*, 2016-Ohio-5531, ¶ 15 (10th Dist.) (affirming probate court's denial of sanctions under R.C. 2323.51); *In re Guardianship of Wernick*, 2006-Ohio-5950 (10th Dist.) (holding that probate court had jurisdiction to hear motion for sanctions under

R.C. 2323.51 and Civ.R. 11 of an allegedly frivolous appeal in guardianship proceeding); *In re Estate of Abraitis*, 2017-Ohio-5577, ¶ 17 (8th Dist.) (holding that probate court had jurisdiction to award sanctions under R.C. 2323.51 and describing argument that estate proceeding was not a "civil action" under the statute as "baseless").

{¶ 70} Furthermore, as previously noted, Ms. Koeberer's stated intention when filing the Motion to Reopen was "to file a will contest" under R.C. 2107.71 if the probate court had reopened her mother's estate.  (Mot. to Reopen at 3.)  That statute expressly describes a will contest as a civil action, as it is titled "Civil action to contest validity of will." R.C. 2107.71.  Such an action is commenced "by filing a complaint in the probate court in the county in which the will or codicil was admitted to probate."  R.C. 2107.71(A). Ms. Koeberer did not employ this procedure, which would have required her to file a complaint as the statute provides, after which the statute of limitations issue might have been litigated as an affirmative defense.  Instead, she filed the Motion to Reopen and asked the probate court for a ruling that, in essence, would have functioned as a declaratory judgment stating that the statute of limitations did not bar the will contest action she wished to file.  The procedure appellants chose to pursue to bring this matter before the probate court does not insulate them from the consequences of their frivolous conduct.

{¶ 71} Apart from the jurisdictional challenge, appellants present no reasoned argument challenging the probate court's findings of fact and ultimate conclusion that appellants' conduct was frivolous under R.C. 2323.51.  The statute defines "frivolous conduct" as

> Conduct of an inmate or other party to a civil action . . . or other party's counsel of record that satisfies any of the following:
>
> (i)  It obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation.
>
> (ii)  It is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.
>
> (iii) The conduct consists of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

> (iv)  The conduct consists of denials or factual contentions that are not warranted by the evidence or, if specifically so identified, are not reasonably based on a lack of information or belief.

R.C. 2323.51(A)(2)(a).

{¶ 72} Appellants refer only in passing to the probate court's determination that their conduct was frivolous.  "Counsel and Appellant's actions were never frivolous pursuant to [R.C.] 2323.51," they assert, with no elaboration other than the meritless jurisdictional argument previously discussed. (Appellants' Brief at 57.)  "It is not 'frivolous' to seek a complete resolution of legal issues after years of harmful errors involving a legal identity," they assert. *Id*. at 58.  This is presumably a reference to the typographical error that motivated them to file the Motion to Reopen, but that is irrelevant to the issue of their conduct during the ensuing litigation.  "Appellant's actions were justifiable, necessary and in good faith," they assert conclusorily, with no discussion or mention of the probate court's extensive findings of fact to the contrary. *Id*.  Nor do appellants challenge the competency or credibility of the evidence supporting those findings. *E.g.*, *Soler v. Evans*, 2006-Ohio-5402, ¶ 15 (10th Dist.) ("Appellate review of a trial court's award of attorney fees for frivolous conduct pursuant to R.C. 2323.51 is under the abuse-of-discretion standard, but the trial court's factual findings will not be disturbed if they are supported by competent, credible evidence.").  Our review of the extensive record developed over years of litigation, the hearing transcripts, the magistrate's decisions, and the probate court's ultimate judgment reveal no abuse of discretion. *Id*.  Nor do appellants challenge the reasonableness of the probate court's fee award.  Finding no error in the probate court's exercise of jurisdiction or the sanctions award under R.C. 2323.51, we overrule the sixth assignment of error.

### G.  Seventh Assignment of Error

{¶ 73} In the seventh assignment of error, appellants argue that the probate court erred when it "did not take judicial notice" of the case Ms. Koeberer filed against Mr. Weir in the Franklin County Court of Common Pleas or a municipal court case in which he allegedly represented her. (Appellants' Brief at 59.)

{¶ 74} " 'Judicial notice concerns a court's acceptance, for purpose of convenience and without requiring a party's proof, of a well-known and indisputable fact.' " *Evans v. Ohio Dept. of Rehab. & Corr.*, 2019-Ohio-4871, ¶ 19 (10th Dist.), quoting *Charles v.*

*Conrad*, 2005-Ohio-6106, ¶ 26 (10th Dist.).  "However, a trial court cannot take judicial notice of court proceedings in another case." *Charles* at ¶ 26, citing *Campbell v. Ohio Adult Parole Auth.*, 1997 Ohio App. LEXIS 4829, (10th Dist. Oct. 28, 1997).  Furthermore, " 'a trial court may not take judicial notice of prior proceedings in the court even if the same parties and subject matter are involved' " and " 'may only take judicial notice of prior proceedings in the immediate case.' " *Evans* at ¶ 19, quoting *Charles* at ¶ 26. "The rationale for the rule that a trial court cannot take judicial notice of proceedings in a separate action is that the appellate court cannot review the propriety of the trial court's reliance on such prior proceedings because that record is not before the appellate court." *Campbell* at *5.

{¶ 75} Given these principles, the probate court did not err when denying Ms. Koeberer's motion to take judicial notice of the cases not before it.  She does not explain *why* she believes such notice was relevant to the case, much less any prejudice that resulted from the probate court's denial.  Her assertion that she "should not have to endure the cost of providing the entire case file" is inadequate to illustrate error.  (Appellants' Brief at 59.) The seventh assignment of error is overruled.

### H. The Parties' Pending Motions

{¶ 76}  Appellants have also filed a motion to supplement the record on appeal, again invoking "judicial notice," seeking to have nearly 500 pages of pleadings and other records from two original actions they filed in the Supreme Court of Ohio "available to the court for review" in this appeal.  (Mar. 25, 2024 Mot. by Appellants to Supp. Record on Appeal at 6.) For the reasons discussed when overruling their seventh assignment of error, the documents in question are not appropriate to bring before this court and the motion is accordingly denied.

{¶ 77}  Finally, we turn to Mr. Weir's motion, which seeks sanctions under both Rule 11 of the Ohio Rules of Civil Procedure and under R.C. 2323.51.  Civil Rule 11 requires that any document filed with the court must be signed by an attorney or pro se litigant, as the signature itself is "a certificate by the attorney or party that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay."  The rule also states that a signatory who willfully violates its requirements or inserts "scandalous or indecent matter" into the document "may be subjected to appropriate action, including an award to the opposing party of expenses and reasonable attorney fees incurred" when

seeking relief under the rule. Civ.R. 11. However, "Civ.R. 11 does not apply to conduct in the court of appeals." *Estate of Garza v. Onesto*, 2016-Ohio-5531, ¶ 15 (10th Dist.), citing *Martin v. Ghee*, 2002-Ohio-1621 (10th Dist.), and *McGowan v. Stoyer*, 2002-Ohio-5410, ¶ 26 (10th Dist.). *See also Asamoah v. Sygma Network*, 2022-Ohio-1868, ¶ 24 (10th Dist.) (citing *Garza* and holding that "Civ.R. 11 does not apply to allegedly frivolous conduct that occurs during an appeal").

{¶ 78} Under R.C. 2323.51(B)(1), "at any time not more than thirty days after the entry of final judgment in a civil action or appeal, any party adversely affected by frivolous conduct may file a motion for an award of court costs, reasonable attorney's fees, and other reasonable expenses incurred in connection with the civil action or appeal." Here, Mr. Weir argues that Ms. Wasserman's "nebulous and disjointed statements" in the June 21, 2024 filing are so "bizarre, unsupportable, scandalous, irrelevant, immaterial, conspiratorial, and false" that they "would, but for immunity granted litigants for statements made in litigation filings, constitute libel and/or slander." (June 24, 2024 Mot. for Sanctions at 2, 8-9.) However, although Mr. Weir asserts that "[e]ven a cursory review" of the filing reveals the frivolous nature of Ms. Wasserman's conduct, he fails to describe how any of the statements in question meet the definition of frivolous conduct under R.C. 2323.51(A)(2)(a), as set forth *supra* in Section II.F. *Id.* at 8. This conclusory assertion is insufficient to demonstrate the "arguable merit" that is a prerequisite to schedule a hearing under R.C. 2323.51(B)(2). *Friedman v. Bexley Pub. Library*, 2025-Ohio-1799, ¶ 34 (10th Dist.), citing *Brisco v. U.S. Restoration & Remodeling, Inc.*, 2015-Ohio-3567, ¶ 37 (10th Dist.). Accordingly, the motion is denied.

## III. Conclusion

{¶ 79} Appellants have failed to demonstrate that the probate court erred when denying the Motion to Reopen or when imposing sanctions on appellants under R.C. 2323.51. Accordingly, their seven assignments of error are overruled. In addition, the March 25, 2024 "Motion by Appellants to Supplement [the] Record on Appeal" and the June 24, 2024 Motion for Sanctions are denied. The judgments of the Franklin County Court of Common Pleas, Probate Division, are affirmed.

*Judgments affirmed.*

EDELSTEIN, J., concurs.
DORRIAN, J., concurs in part and dissents in part.

DORRIAN, J., concurring in part and dissenting in part.

{¶ 80} I respectfully concur in part and dissent in part with the majority decision. I concur with the majority's overruling of the assignments of error and affirming the probate court's judgments. I also concur with the majority's denial of appellants' motion to supplement the record on appeal. Additionally, I concur with the majority's denial of Mr. Weir's motion for sanctions pursuant to Civ.R. 11.

{¶ 81} However, I dissent from the majority's denial of Mr. Weir's motion for attorney fees, court costs, and reasonable expenses pursuant to R.C. 2323.51. I would find that Ms. Koeberer's and Ms. Wasserman's conduct in filing this appeal meets one or more of the definitions of frivolous conduct set forth in R.C. 2323.51(A)(2)(a). Therefore, I would grant the motion and set this case for a hearing before a magistrate of this court for determination regarding the appropriate award of attorney fees, court costs, and reasonable expenses.

_____